14-2505 (L)

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: June 3, 2015    Decided: September 8, 2015)

Docket Nos. 14-2505, 14-3689

───────────────────

United States of America,

Appellant,

v.

Felipe Diaz, AKA Sealed Defendant 1, and

Wellington Diaz, AKA Sealed Defendant 2,

Defendants–Appellees.

───────────────────

Before:        SACK, WESLEY, and HALL, *Circuit Judges*.

The United States appeals from an order issued orally on June 9, 2014,

confirmed in writing on June 10, 2014, and an order issued orally on September

24, 2014, confirmed in writing on the same day, both by the United States District

Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*),

granting the motions of defendants Wellington Diaz and Felipe Diaz,

respectively, to suppress evidence obtained following the stop and search of their

vehicle on an interstate highway in Mississippi.  The district court concluded that

the state police officer who conducted the stop lacked reasonable suspicion to

believe that the driver had committed a traffic violation and the stop therefore violated the Fourth Amendment.  We conclude, however, that the officer's observation of several of the defendants' vehicle's wheels twice touching or crossing the solid painted line separating the right lane of the highway from the shoulder gave rise to reasonable suspicion of a traffic violation.  The orders of the district court are therefore:

REVERSED and REMANDED.

JOSHUA A. NAFTALIS (Brian A. Jacobs, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, *for Appellant.*

SUSAN JEWELL WALSH, Vladeck, Waldman, Elias & Engelhard, P.C., New York, New York, *for Defendant–Appellee Wellington Diaz.*

JESSE M. SIEGEL, New York, New York, *joining the brief of Wellington Diaz*, *for Defendant-Appellee Felipe Diaz.*

SACK, *Circuit Judge*:

This is an appeal from orders of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) granting the motions of defendants Wellington Diaz and Felipe Diaz, respectively, to suppress evidence obtained following the stop and search of a vehicle driven by

Wellington and owned by his brother and passenger, Felipe.[1]  The district court granted the motions on the ground that the police officer who conducted the stop lacked reasonable suspicion to conclude that a traffic violation had occurred under the relevant state law.  We conclude, however, that the officer's observation of several of the defendants' vehicle's wheels twice touching or crossing the solid painted line separating the right lane of the highway from the shoulder gave rise to reasonable suspicion that a traffic violation had occurred.  We therefore reverse and remand with instructions to the district court to consider the parties' remaining arguments as to the constitutionality of the stop and ensuing search, which the court, having granted the motions on other grounds, did not reach.

## BACKGROUND

*Factual Background*

On the evening of November 19, 2013, Senior Police Officer Gordon Christopher Read[2] of the Meridian Police Department in Meridian, Mississippi, was within that city patrolling Interstate Highway 20 ("I-20")/Interstate Highway

---

[1] We refer to the brothers by their first names in an attempt to avoid confusion.

[2] The district court's June 10, 2014, written order confirming its prior oral grant of Wellington Diaz's suppression motion spells the arresting officer's surname "Reed,"  but we follow the transcript of the suppression hearing in the district court in spelling his name "Read."

3

59 ("I-59")[3] in his police vehicle pursuant to his ordinary traffic-monitoring duties.[4]

Sometime between 8:15 and 8:30 p.m., Read received a telephone call from a United States Department of Homeland Security ("DHS") agent, who asked that Read assist with the stop of an 18-wheel tractor-trailer that DHS believed might be involved in narcotics trafficking. The agent explained that the vehicle would be red or white, bearing a "Triple K Logistics" or "Triple Y Logistics" logo and New York license plates. The agent indicated that he had information that the truck was about an hour-and-a-half away from Read's location. The agent did not describe his basis for thinking the truck might be involved in narcotics trafficking.

By about 10:45 p.m., Read noticed that more than one-and-a-half hours had elapsed and assumed that the DHS-identified vehicle had not passed him or

---

[3] The interstate highway that traverses the city of Meridian west-to-east shares the denomination Interstate 20 and Interstate 59 while within the city. It is also referred to there as the "I-20, I-59 corridor." Tr. Suppression Hr'g, J.A. 29, 31-33.

[4] The only witness to testify at the suppression hearing was Read, whose testimony the district court later characterized as "not . . . incredible." Tr. Suppression Hr'g, J.A. 138. We accept the undisputed aspects of Read's testimony regarding the events leading up to the traffic stop as true for purposes of this appeal and note material disputes as they arise.

that he had missed it. Read began driving eastbound on I-20/I-59, a four-lane highway with two lanes running in each direction, to resume his ordinary duties.

As he drove in the right eastbound lane of I-20/I-59, Read approached a black 18-wheel tractor-trailer traveling in the same direction and lane. The truck did not match the description given by the DHS agent: It was solid black, not red or white, and bore New Jersey, not New York, license plates. According to Read, as he followed the truck over the course of about three miles, he saw the right rear wheels of the tractor-trailer "cross" the solid painted white line separating the right lane of traffic from the right shoulder of the road on two occasions. According to Wellington, the vehicle did not cross the line. Read decided to stop the tractor-trailer because he thought that the two instances in which the tractor-trailer crossed the line constituted careless driving in violation of Mississippi state traffic law.[5]

---

[5] The relevant "careless driving" statute states:

> Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving. Careless driving shall be considered a lesser offense than reckless driving.

Miss. Code Ann. § 63-3-1213 (2015).

Read activated his vehicle's flashing lights in a successful effort to effect a stop of the tractor-trailer. The activation of the lights also automatically initiated the police vehicle's audio and video recording system. The driver of the tractor-trailer, later identified as Wellington, pulled the vehicle to the side of the road. Read exited his vehicle and approached the passenger side window of the tractor-trailer. He asked Wellington to produce his driver's license, registration, and insurance information and to exit the vehicle and walk with him to the rear of the vehicle in the interests of safety. Wellington complied.

Read identified himself and explained that he was "making sure [Wellington] hadn't had anything to drink, [he wasn't] falling asleep or anything, or [hadn't] dropped [his] cell phone or something." Tr. Suppression H'rg, J.A. 46. Wellington responded that he had been looking in his side mirrors. Read returned to his vehicle and checked Wellington's license and registration. The officer's research revealed that the license was valid and there were no outstanding warrants. Read also spoke with the passenger, Felipe.

Meridian Police Department officers subsequently searched the tractor-trailer. According to the government, both Wellington and Felipe consented to this search; Wellington and Felipe deny that they did. The search yielded

approximately five kilograms of heroin and four kilograms of cocaine, apparently recovered from behind a speaker in the rear wall of the truck's sleeping berth.

*Procedural History*

In December 2013, a federal grand jury in the Southern District of New York returned an indictment against both Felipe and Wellington for conspiracy to possess with intent to distribute (1) one kilogram or more of substances containing a detectable amount of heroin in violation of 21 U.S.C. § 841(b)(1)(A), and (2) 500 grams or more of substances containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(b)(1)(B). The indictment also charged that Felipe drove from the Bronx, New York, to Texas to collect narcotics in furtherance of the conspiracy.

In April 2014, Wellington moved in the district court to suppress the drugs recovered from the tractor-trailer as evidence. He argued that suppression was warranted because (1) the officer lacked reasonable suspicion to believe that a traffic violation had occurred; (2) even if the requisite reasonable suspicion existed, the stop exceeded its permissible scope; (3) even if the stop was

constitutional, the search that ensued was not; and (4) even if the search was permissible at the outset, it exceeded its permissible scope.

At the April 2014 suppression hearing, the government called one witness – Read. Wellington did not call any witnesses. Read testified that the vehicle's relatively slow speed initially attracted his attention, although he later characterized the truck's speed of about 70 miles per hour as unsurprising in light of the many truck stops in the area.[6] Read also testified that there were no vehicles between his vehicle and the tractor-trailer, the road was straight, and his vehicle was within approximately eight to fifty yards of the tractor-trailer on each occasion he saw it cross the line. With respect to the alleged line-crossing, Read testified that he observed the tractor-trailer "cross[] over, [come] back over, and then again cross[] over again." Tr. Suppression H'rg, J.A. 37. Read explained that although he could only see the rearmost set of tires, "the whole right side of the truck merged over on the . . . white line." *Id.*, J.A. 38.

The court orally granted Wellington's motion to suppress. The court noted that the tractor-trailer's width "almost equaled the width of the lane" in which it

---

[6] It is not entirely clear why Read thought that a tractor-trailer traveling at 70 miles per hour was moving slowly, in light of his testimony that "[t]he speed limit in the city limits of Meridian on the interstate is going to be 70 miles an hour. There is a certain section that's 60, but it's basically 70 miles an hour." Tr. Suppression H'rg, J.A. 36.

8

was traveling. *Id.*, J.A. 137. In light of that observation, the court expressed skepticism that such "large trucks [could] always be encompassed within the perimeters of the lanes." *Id.*, J.A. 138. The court concluded that although it found Read's testimony credible to the extent that "at one point or a second point the back of the truck, the back four wheels, may have hit those [rumble] strips,"[7] it was, in the court's view, "impossible for the very back of the truck to drive an exactly parallel line to the front wheels of the tractor." *Id.* The court concluded that the government had failed to demonstrate specific and articulable facts in support of a stop based on a violation of Mississippi's careless driving statute. Having granted the motion to suppress on that ground, the court did not reach the remainder of Wellington's arguments in support of the motion.

The court confirmed its oral ruling in a June 10, 2014, written order. The order memorialized the court's view that Read's testimony failed to establish "specific and articulable facts why momentary touching by the back four wheels of a 53 foot truck along the right line dividing the driving lane from the shoulder

---

[7]      A shoulder rumble strip is a longitudinal safety feature installed on a paved roadway shoulder near the outside edge of the travel lane. It is made of a series of milled or raised elements intended to alert inattentive drivers (through vibration and sound) that their vehicles have left the travel lane.

*Rumble Strips and Rumble Stripes*, Fed. Highway Admin. (Dec. 9, 2014), http://safety.fhwa.dot.gov/roadway_dept/pavement/rumble_strips/faqs.cfm.

was 'careless and imprudent' driving." Order Granting Def.'s Mot. to Suppress at 2, J.A. 145. The court noted that "aside from the argument based on the two momentary touches of the highway divider, there was no evidence whatsoever of any other careless or imprudent driving." *Id.* A motion for reconsideration brought by the government was denied orally and in writing later that month.

Felipe filed a similar suppression motion in September 2014, after he was unable to reach a cooperation agreement with the government. The court granted the motion orally for the same reasons as it had granted Wellington's motion; it later confirmed the oral ruling in a written order.

The government timely appealed as to both defendants.

## DISCUSSION

The government argues primarily that its evidence "that the defendants' truck drove over the fog line[8] twice in the absence of adverse conditions established an objectively reasonable suspicion to believe that a traffic violation had occurred," Appellant's Br. at 13, and that it was error for the court to conclude otherwise. We agree.

---

[8] The term "fog line" generally refers to "the white line on the right-hand side of the highway that separates the driving lane from the shoulder." *State v. Kempa*, 235 S.W.3d 54, 58 n.2 (Mo. Ct. App. 2007).

I.    Right to Appeal and Standard of Review

The United States brings this appeal from the district court's orders to

suppress evidence pursuant to 18 U.S.C. § 3731, which provides in pertinent part:

> An appeal by the United States shall lie to a court of appeals from a
> decision or order of a district court suppressing or excluding
> evidence . . . not made after the defendant has been put in jeopardy and
> before the verdict or finding on an indictment or information, if the United
> States attorney certifies to the district court that the appeal is not taken for
> purpose of delay and that the evidence is a substantial proof of a fact
> material in the proceeding.

The United States Attorney for the Southern District of New York filed such

certifications with the district court on July 7, 2014, and on October 1, 2014.

In reviewing a district court's grant or denial of a motion to suppress, we

review the court's factual findings for clear error and its legal determinations *de

novo*.  *United States v. Elmore*, 482 F.3d 172, 178 (2d Cir. 2007).

II.    Whether the Stop was Permissible Under the Fourth Amendment

"The Fourth Amendment permits brief investigative stops – such as the

traffic stop in this case – when a law enforcement officer has 'a particularized and

objective basis for suspecting the particular person stopped of criminal activity'"

or a traffic violation.  *Navarette v. California*, --- U.S. ---, ---, 134 S. Ct. 1683, 1687

(2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *see also United*

*States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009) ("[R]easonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop."). While the reasonable suspicion standard requires "'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause," *Navarette*, --- U.S. at ---, 134 S. Ct. at 1687 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)), it does entail "some minimal level of objective justification," *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000) (internal quotation marks omitted). This objective inquiry disregards the officer's subjective motivation and asks instead whether a reasonable officer would suspect unlawful activity under the totality of the circumstances. *Id.* at 132-33; *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing").

The district court's relevant factual findings as to the circumstances in this case, which we review for clear error, *see Elmore*, 482 F.3d at 178, are essentially undisputed. The court found that the officer observed the back four wheels on the right side of the defendants' tractor-trailer touch the painted line dividing the

12

driving lane from the shoulder on two occasions.[9] The undisputed testimony of Read, whose testimony the court generally credited, also established that the road was straight in the area in which the observation took place.

The government argues that the district court erred in concluding that these facts did not justify the ensuing stop, in part because several cases from other circuits "support the conclusion that multiple fog line incursions give rise to a reasonable suspicion of a traffic violation." Appellant's Br. at 20. *See, e.g.,* *United States v. Coleman*, 700 F.3d 329, 334-35 (8th Cir. 2012) (officer who "twice observed [defendant] swerve over the fog line separating the right lane of the highway from the shoulder" had reasonable suspicion to believe defendant had violated Nebraska law); *United States v. Zucco*, 71 F.3d 188, 190 (5th Cir. 1995) (officers who observed defendant "veer on to the shoulder of the interstate at least three times" had reasonable suspicion to believe defendant had violated Texas law).

---

[9] The defendants argue that the court "did not *hold* that the back tires in fact hit the shoulder line," Appellees' Br. at 12 (emphasis added), but we read the district court's written memorandum, in which it discussed the vehicle's "two momentary touches of the highway divider" and concluded that "Officer [Read] . . . could not present specific and articulable facts why momentary touching by the back four wheels . . . was 'careless and imprudent' driving," Order Granting Def.'s Mot. to Suppress at 2, J.A. 145, as crediting at least that aspect of the officer's testimony.

These cases are instructive, but they are not – and it is virtually impossible for them to be – dispositive of the reasonable suspicion inquiry in light of our obligation always to "take[] into account the totality of the circumstances—the whole picture." *Navarette*, --- U.S. at ---, 134 S. Ct. at 1687 (internal quotation marks omitted).  The objective reasonableness of an officer's suspicion preceding any given traffic stop depends on the totality of the circumstances leading to *that* stop and on the traffic law at issue.  For that reason, "bright-line" rules are inappropriate in this context.  *See Arvizu*, 534 U.S. at 274 ("[T]he concept of reasonable suspicion is somewhat abstract. . . .  [W]e have deliberately avoided reducing it to a neat set of legal rules." (internal quotation marks omitted)).

That said, we think that the totality of the circumstances leading to *this* stop did give rise to reasonable suspicion of a traffic violation under Mississippi law.  The officer's observation of the tractor-trailer twice deviating from its lane by touching or crossing the solid painted line dividing the lane from the shoulder under the circumstances of this case would "warrant a [person] of reasonable caution in the belief," *Terry v. Ohio*, 392 U.S. 1, 22 (1968) (internal quotation marks omitted), that the driver of the vehicle had driven "in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use

of the streets and highways and all other attendant circumstances." Miss. Code Ann. § 63-3-1213.

The district court reached the contrary conclusion in part because "normal driving and atmospheric conditions often cause a slight drift of the rear of the rig." Order Granting Def.'s Mot. to Suppress at 2, J.A. 145. We agree that a tractor-trailer's touching or crossing of the fog line might be explained by circumstances other than carelessness: for example, swerving to avoid an object in the road, or, conceivably, a momentary but reasonable loss of attention – because of the appearance of an insect in the cab, or a sudden loud sound or flash of light. But we "have consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'" *Navarette*, --- U.S. at ---, 134 S. Ct. at 1691 (quoting *Arvizu*, 534 U.S. at 277). Even if no carelessness and thus no violation occurred, "[t]he determinative question is not whether [the defendant] actually violated the [traffic law] . . . but whether an objectively reasonable police officer could have formed a reasonable suspicion that [the defendant] was committing a [] violation." *Stewart*, 551 F.3d at 191 (second and fourth brackets in original) (quoting *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005)). We

15

think that a reasonable officer could have formed a reasonable suspicion of carelessness under these circumstances.

Our conclusion is buttressed by decisions of the Mississippi state courts. Although "[w]hether a search and seizure is constitutional under the circumstances of a particular case . . . is determined by applying federal law," *United States v. Scopo*, 19 F.3d 777, 785 (2d Cir. 1994), decisions from state courts, "the ultimate expositors of state law," *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), construing the criminal or traffic law in question can provide us with assistance in making that inquiry.

The Mississippi Supreme Court has not addressed the question of what constitutes careless driving or reasonable suspicion thereof, but several Mississippi Court of Appeals[10] decisions have concluded that an officer's observation of one or more lane-line incursions justifies a traffic stop pursuant to Mississippi's careless driving statute. *See, e.g., Dominick v. State*, 108 So. 3d 452, 456 (Miss. Ct. App. 2012) (officer who observed vehicle twice "bump[]" highway

---

[10]   "The [Mississippi] Court of Appeals hears cases assigned by the [Mississippi] Supreme Court.  The Court of Appeals is an error correction court.  It hears and decides appeals on issues in which the law is already settled, but the facts are in dispute." *Court of Appeals: About the Court*, Admin. Office of Courts, State of Miss. Judiciary, https://courts.ms.gov/aboutcourts/coa_about.html (last visited Aug. 17, 2015).

lane lines had reasonable suspicion defendant had violated Mississippi careless driving statute); *Shelton v. State*, 45 So. 3d 1203, 1209 (Miss. Ct. App. 2010) (officer who observed vehicle cross "over the fog line and the lane-divider lines twice" had reasonable suspicion of careless driving); *Tran v. State*, 963 So. 2d 1, 14 (Miss. Ct. App. 2006) (officer who observed vehicle once cross fog line had reasonable suspicion of careless driving), *aff'd*, 962 So. 2d 1237 (Miss. 2007) (en banc); *Saucier v. City of Poplarville*, 858 So. 2d 933, 935 (Miss. Ct. App. 2003) (vehicle's crossing over center line indicated driver was "driving without due regard for the width and use of the street" under careless driving statute (quoting Miss. Code Ann. § 63-3-1213)).

None of these cases is – or could likely be – factually identical to the present one. *See Ornelas v. United States*, 517 U.S. 690, 698 (1996) ("[B]ecause the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multi-faceted, one determination will seldom be a useful 'precedent' for another." (internal quotation marks omitted)). Nor are we, of course, bound by them. But we derive from this pattern of decisions the sense that lane deviation in the absence of adverse conditions will often give rise to at least the suspicion of

careless driving in Mississippi under the Mississippi law at issue. Having

carefully reviewed the record, we agree with that conclusion here.

We also note that the Fifth Circuit drew a similar conclusion in an unpublished and nonprecedential disposition that was issued after the district court granted the defendant's motion in this case. *See United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014) (per curiam). It is not binding on courts of the Fifth Circuit, *see id.* at 247 n.*, let alone on us. We find its reasoning nonetheless persuasive. The court concluded that the "broad language" of the Mississippi careless driving statute, when read in combination with the Mississippi case law, supports the conclusion that "a traffic stop for careless driving is justified in Mississippi when a law-enforcement officer observes an automobile hit the fog line." *Id.* at 251. The court concluded that an officer's observation of a van that once "hit, or bumped, the fog line"[11] of an interstate

---

[11] As we have pointed out, the district court credited Read's testimony at least to the extent the court found that he had indeed observed two fog line incursions by the tractor-trailer. The extent to which the court understood Read's description of that incursion as the vehicle "crossing," rather than "touching," the fog line (assuming those terms are distinguishable), however, is unclear. But even if the court was under the impression that Read observed only that the wheels touched, rather than crossed, the line, we think that the Mississippi Court of Appeals decisions discussed above, as well as the Fifth Circuit's reasoning in *Rosales-Giron*, support our conclusion that the officer's observation of two touches of the fog line, considered in the totality of the

18

highway justified a subsequent stop. *Id.* at 248-52. We reach the same conclusion for similar reasons here.[12]

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's orders granting the motions to suppress and REMAND the case to the district court for further proceedings. The court should on remand consider the parties' remaining arguments as to the constitutionality of the stop and ensuing search. We offer no view as to the correct outcome of any such inquiry that the district court may undertake, and should not be understood to suggest one.

---

circumstances of this case, was sufficient to give rise to reasonable suspicion that a traffic violation had occurred.

[12] Because we conclude that the stop was supported by reasonable suspicion, we need not reach the government's alternative contention that even if Read was mistaken as to what constitutes a violation of Mississippi's careless driving statute, his mistake was reasonable enough to justify the stop under *Heien v. North Carolina*, --- U.S. ---, 135 S. Ct. 530 (2014).