United States v. Grady

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of March, two thousand sixteen.

PRESENT: DENNIS JACOBS,
    PETER W. HALL,
    GERARD E. LYNCH,
        <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,
    <u>Appellee</u>,

    -v.-            15-1401

SHAEEM GRADY,
    <u>Defendant-Appellant</u>.

- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:      MELISSA A. TUOHEY, Assistant Federal Public Defender (James P. Egan, <u>on the brief</u>), <u>for</u> Lisa A. Peebles, Federal Public Defender, Syracuse, New York.

FOR APPELLEE:      PARKER A. RIDER-LONGMAID, United States Department of Justice,

Washington, D.C. (Geoffrey J.L. Brown, Assistant United States Attorney, on the brief), for Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Shaeem Grady appeals his conviction, after jury trial in the United States District Court for the Northern District of New York (Scullin, J.), for possession of cocaine base with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c); possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Grady challenges the denial of his pre-trial motion to suppress evidence, and the admittance of certain expert testimony at trial. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**1.** Two officers of the Syracuse Police Department approached a parked vehicle at night; upon arriving at the passenger-side door with his flashlight, one officer observed a sandwich bag containing crack cocaine on Grady's lap, in plain view. Grady challenges the officers' initial approach of the car as a Fourth Amendment violation. At the suppression hearing, the officers testified and exhibits were entered into evidence. Grady's suppression motion was denied by written decision.[1]

The district court concluded that there was no Fourth Amendment violation, because (1) the officers' initial

---

[1] We accept the district court's findings of fact, which were not clearly erroneous, and review de novo its conclusions of law. See United States v. Diaz, 802 F.3d 234, 238 (2d Cir. 2015).

encounter with the occupants of the vehicle was consensual; and (2) the officers had reasonable suspicion to believe that the vehicle was parked in violation of a Syracuse parking ordinance.  We need not decide whether the officers' initial approach of the vehicle constituted a seizure; assuming arguendo that it did amount to an investigative Terry stop, see Terry v. Ohio, 392 U.S. 1, 30-31 (1968), we affirm because the officers had the requisite reasonable suspicion of a parking violation.[2]

The City of Syracuse's odd/even parking ordinance requires cars in designated areas to park on the odd-address side of the street from 6 p.m. on an odd day to 6 p.m. on the next (even) day; and on the even-address side of the street from 6 p.m. on an even day to 6 p.m. on the next (odd) day.  A vehicle is defined as "parked" when stopped even if occupied; however, it is not "parked" if only temporarily stopped "for the purpose of and while actually engaged in loading or unloading merchandise or passengers." N.Y. Veh. & Traf. Law § 1200(c); Syracuse, N.Y., Charter, Gen. Ordinances pt. M., ch. 15, art. I, 15-1(19).  The Syracuse Police Department is authorized to ticket or tow for violation of the even/odd parking rules.

While on patrol in a marked police car at approximately 11:00 p.m. on an even day, Officers Decker and Ettinger made a left turn onto Catawba Street, and observed a white Impala stopped on the odd side of the street.  They pulled their patrol car over and parked in front of and facing the Impala.  They approached the Impala with flashlights in hand.  Officer Decker walked to the driver's side, intending to tell the occupants that the vehicle was parked on the wrong side of the street and should be moved; and Officer Ettinger walked to the passenger's side.  At no time did the officers observe anyone getting into or out of the vehicle,

---

[2]  Reasonable suspicion of a civil traffic violation provides a sufficient basis for law enforcement officers to make an investigative stop.  United States v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009).  All "circuits that have considered the question whether a parking violation justifies a Terry stop have found no legally meaningful distinction between a parking and a moving violation." United States v. Spinner, 475 F.3d 356, 358 (D.C. Cir. 2007) (citing cases).  Grady does not contest that traffic violations include parking infractions.

or loading or unloading items from it.  These objective, particularized facts provided reasonable suspicion to believe that the Impala was parked in violation of the odd/even parking ordinance.  See United States v. Diaz, 802 F.3d 234, 239 (2d Cir. 2015).

Grady argues that the officers' observation was for too short a time to have determined whether the Impala was actively loading or unloading.  But as found by the district court, the officers observed no loading or unloading in the span of time that they turned onto Catawba Street, noticed the Impala, pulled over, stopped the police vehicle, exited the police vehicle, and approached the Impala--a sufficient period in which to suspect that the vehicle was parked unlawfully.[3]  The officers were not required to conduct surveillance long enough to "rule out the possibility of innocent conduct."  Diaz, 802 F.3d at 240 (quoting Navarette v. California, 134 S. Ct. 1683, 1691 (2014)).

Grady contends that any reasonable suspicion dissipated once the officers approached the car and realized that it was occupied and that the engine was running.  This argument lacks merit.  The ordinance forbids stopping on the wrong side of the street without active loading or unloading, regardless of whether the vehicle is occupied, or whether the engine is running.  See N.Y. Veh. & Traf. Law § 1200(c) (definition of "parking"); Syracuse, N.Y., Charter, Gen. Ordinances pt. M., ch. 15, art. I, 15-1(19) (same).

**2.**  At trial, the government's expert witness, Detective Proud, testified on the subject of narcotics distribution and packaging, chiefly the so-called "freestyle" method of crack cocaine distribution, in which the seller holds the cocaine base in a bulk form, e.g., in a single rock, and breaks off purchases only at the time of sale.  This differs from the method in which one-to-three doses of crack cocaine (typically one-tenth of a gram each) are pre-packaged for sale in individual plastic baggies. Grady challenges the admission of this testimony pursuant to Federal Rules of Evidence 702(a) and 704(b).

---

[3] Officer Ettinger testified that he observed the Impala for approximately ten seconds before deciding to approach it.

4

The district court did not abuse its discretion in admitting Detective Proud's testimony.  See United States v. Barrow, 400 F.3d 109, 123 (2d Cir. 2005).  Rule 702(a) requires that expert testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  Detective Proud's testimony did that: it concerned facts not within the average juror's knowledge, and was important to understanding the potential significance of Grady's possession of a single 2.27-gram rock of crack cocaine (and a steak knife).  See United States v. Tapia-Ortiz, 23 F.3d 738, 741 (2d Cir. 1994) ("Testimony about the weight, purity, dosages, and prices of cocaine clearly relates to knowledge beyond the ken of the average juror.").

At one point, Detective Proud testified that, in his experience, 2.27 grams of crack cocaine was consistent with distribution as opposed to personal use, because 2.27 grams constituted approximately 22 to 25 individual doses of crack cocaine, and because a typical user would limit purchases to one-to-three doses at a time, so as to avoid a big investment in crack of poor quality.  Grady argues that this amounted to an opinion on Grady's intent to distribute, and thus violated Rule 704(b).  See Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.").

"Rule 704(b) does not prohibit all expert testimony that gives rise to an inference concerning a defendant's mental state.  The . . . rule . . . means that the expert cannot expressly 'state the inference,' but must leave the inference, however obvious, for the jury to draw." United States v. DiDomenico, 985 F.2d 1159, 1165 (2d Cir. 1993) (citation omitted).  Detective Proud's testimony did not violate Rule 704(b) because, while it could have been used by the jury to conclude that the crack cocaine in Grady's possession was intended for distribution rather than personal use, that final inference was left to the finder of fact.  See United States v. Lopez, 547 F.3d 364, 373-74 (2d Cir. 2008); United States v. Taylor, 18 F.3d 55, 60 (2d Cir. 1994).  Detective Proud's testimony made clear that his opinion as to the hypothetical was based on his general experience, not on any specific knowledge of Grady's mental state; and he conceded on cross-examination that he "suppose[d]" it was "possible" for a person to smoke 2.27

5

grams of crack cocaine over the course of one night. App'x 445. Accordingly, the jury could have rejected the inference that Grady intended to distribute the cocaine base, and found instead that it was intended for Grady's (or one of the other Impala occupants') own use.

For the foregoing reasons, and finding no merit in Grady's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK