**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 16-1244

UNITED STATES OF AMERICA,

Appellee,

v.

JEREMY LAWRENCE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Thompson, Stahl, and Kayatta,
Circuit Judges.

Gordon W. Spencer on brief for appellant.
Michael J. Crowley, Assistant United States Attorney, with
whom Carmen J. Ortiz, United States Attorney, was on brief, for
appellee.

January 13, 2017

**STAHL**, **Circuit Judge**. Defendant-Appellant Jeremy Lawrence raises a single narrow issue for our consideration on appeal. Could a law enforcement officer objectively and reasonably believe that a driver had violated the Massachusetts marked lanes statute, Mass. Gen. Laws ch. 89, § 4A, after observing the right two wheels of the driver's vehicle cross a "fog line"[1] by approximately two feet while traveling on a two-lane road? Based on our review of the statute's text and relevant Massachusetts case law, we agree with the district court that a law enforcement officer could hold such a belief under these particular factual circumstances. Accordingly, we affirm.

## I. Facts and Background

On June 21, 2013, Detective Michael Reynolds ("Detective Reynolds"), saw a black sedan traveling at a rapid rate of speed on Union Street in Braintree, Massachusetts. Union Street is a secondary, two-lane road, with each lane going in opposite directions. The road is, for the most part and in the area relevant

---

[1] "The term 'fog line' generally refers to 'the white line on the right-hand side of [a road] that separates the driving lane from the shoulder.'" United States v. Diaz, 802 F.3d 234, 238 n.8 (2d Cir. 2015) (quoting State v. Kempa, 235 S.W.3d 54, 58 n.2 (Mo. Ct. App. 2007)).

to this case, divided by a solid yellow line and framed by white fog lines.

As the sedan approached, and then passed, his own marked police cruiser, Detective Reynolds noticed that its right front and rear tires had drifted outside its travel lane, crossing the fog line by approximately two feet.[2] Detective Reynolds quickly did a computer check on the sedan's license plate number in his cruiser, and found that the vehicle was registered to Shawn Woodford of 51 Storrs Avenue in Braintree. The day prior, Detective Reynolds had received a tip that the Quincy Police Department was investigating the defendant-appellant, Jeremy Lawrence, for cocaine trafficking and that he possessed a vehicle in Braintree registered under Woodford's name and address.

Detective Reynolds proceeded to stop the sedan, believing that the driver's crossing of the fog line constituted a "marked lanes violation" in contravention of Chapter 89, Section 4A of the Massachusetts General Laws.[3] His tip proved accurate, as Lawrence turned out to be the sedan's driver. During later

---

[2] Detective Reynolds had parked his cruiser by a stop sign and crosswalk near the intersection of Alexander Road and Union Street.

[3] Violation of this provision is a criminal misdemeanor punishable by a fine. Mass. Gen. Laws ch. 89, § 5; see, e.g., Commonwealth v. Fleenor, 652 N.E.2d 899, 900 n.1 (Mass. App. Ct. 1995).

searches of Lawrence's person and the vehicle, Detective Reynolds seized twenty-one small bags of crack cocaine.

On April 4, 2014, Lawrence filed a motion to suppress the seized drugs, challenging the lawfulness of the traffic stop and the ensuing searches on Fourth Amendment grounds. The district court held an evidentiary hearing, after which it denied the motion to suppress. As pertains to this appeal, the court concluded that it was unclear whether Lawrence's conduct actually violated Section 4A. However, the court ruled that Detective Reynolds had nonetheless effectuated a lawful stop because he had, at worst, made an objectively reasonable mistake in concluding that a violation had occurred. The court then also confirmed the lawfulness of the ensuing searches.

Lawrence does not challenge the district court's conclusion as to these searches on appeal. Instead, Lawrence's sole argument is that the initial traffic stop was unlawful, arguing that a driver does not violate Section 4A simply because he or she crosses a fog line unless there is also evidence that doing so was unsafe. He also claims that no reasonable police officer could conclude otherwise.

## II. Analysis

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law de novo. United States v. Dubose, 579 F.3d

- 4 -

117, 120 (1st Cir. 2009). Under the Fourth Amendment, a traffic stop constitutes a seizure of both the stopped vehicle and its occupants, meaning the stop "must satisfy a standard of objective reasonableness." United States v. Arnott, 758 F.3d 40, 43 (1st Cir. 2014) (citing Terry v. Ohio, 392 U.S. 1, 19 (1968)). To that end, a traffic violation is an objectively reasonable basis for a traffic stop. Id. at 44 n.5 (noting that defendant "roll[ing] through a stop sign . . . provided an independently sufficient ground for stopping the car"). Thus, "[a] traffic stop is constitutional if an officer has a reasonable suspicion of unlawful conduct involving a motor vehicle or its operation." United States v. Jenkins, 680 F.3d 101, 104 (1st Cir. 2012). See generally United States v. Monteiro, 447 F.3d 39, 43 (1st Cir. 2006) ("In evaluating whether reasonable suspicion existed, we 'look at the totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing.'") (alteration in original) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

As relevant here, reasonable suspicion can rest on an objectively reasonable mistake of law. See Heien v. North Carolina, 135 S. Ct. 530, 540 (2014) (concluding that officer's mistaken belief that ambiguous vehicle code required more than one functional brake light was objectively reasonable). However, "an officer can gain no Fourth Amendment advantage through a sloppy

- 5 -

study of the laws he is duty-bound to enforce." Id. at 539-40. To that effect, Justice Kagan expanded on the objective reasonableness requirement in her Heien concurrence, stating that an officer's mistake of law is objectively reasonable "when the law at issue is 'so doubtful in construction' that a reasonable judge could agree with the officer's view." Id. at 541 (Kagan, J., concurring) (quoting The Friendship, 9 F. Cas. 825, 826 (C.C.D. Mass. 1812 (No. 5,125)). Under this framework, then, if a mistake of law leads an officer to initiate a traffic stop but the mistake is objectively unreasonable, any evidence stemming from the traffic stop should be suppressed. See id. at 536 (majority opinion).

Here, the district court's factual findings regarding the circumstances of the traffic stop are essentially undisputed. We therefore limit our analysis to the district court's interpretation of Section 4A and whether, considering the totality of the circumstances, an officer could have reasonably suspected that Lawrence had committed a violation of that provision.[4]

---

[4] We note that "[r]easonableness in this context is a construct that must be judged according to objective criteria; it is not dependent on an individual officer's subjective motives." United States v. Ruidíaz, 529 F.3d 25, 29 (1st Cir. 2008). Thus, "the actual motivations of the individual officers involved" are of no import. Whren v. United States, 517 U.S. 806, 813 (1996). Consequently, the possibility that something other than the purported traffic violation may have motivated Detective Reynolds to stop Lawrence's vehicle is not legally relevant.

The applicable portion of the Massachusetts marked lanes statute reads as follows:

> When any way has been divided into lanes, the driver of a vehicle shall so drive that the vehicle shall be entirely within a single lane, and he shall not move from the lane in which he is driving until he has first ascertained if such movement can be made with safety.

Mass. Gen. Laws ch. 89, § 4A.

Lawrence focuses on the last clause of this provision, arguing that Section 4A only applies to unsafe crossings of the lines between travel lanes, and not to innocuous crossings of the fog line.[5] The Government, meanwhile, emphasizes that Lawrence violated the statute when he failed to "drive" his vehicle "entirely within a single lane" once he crossed the fog line. The final clause is irrelevant, the Government continues, because nothing suggests that Lawrence meant to "move from the lane in which he [was] driving" to another location. Nonetheless, the district court correctly observed that under Heien we need not resolve whether crossing a fog line on a two-lane road is a violation of Massachusetts law. We need only decide whether Detective Reynolds reasonably thought it was. Compare Heien, 135

---

[5] Lawrence briefly contends that it is not clear whether the road on which he was driving had been "divided into lanes" as envisioned by the statute. He then immediately concedes, however, that the fog line marks the "first" or "original" travel lane and that unsafe crossings of the fog line could constitute a Section 4A violation.

S. Ct. at 540 (concluding mistake of law was objectively reasonable because police officer had misinterpreted ambiguous traffic-related statutory provision that the state's appellate courts had not previously addressed), with United States v. Flores, 798 F.3d 645, 649-50 (7th Cir. 2015) (concluding that police officer could not reasonably have believed that motorist's use of license-plate frame found on "vast" number of cars violated Illinois statute).

To that end, we agree with the district court that Detective Reynolds's interpretation of Section 4A was objectively reasonable. No Massachusetts court has squarely decided the issue, and available state authorities[6] suggest that it would require "hard interpretive work" to overturn Detective Reynolds's judgment that Massachusetts law forbids drivers, on roads divided into lanes, from straying across a fog line in these circumstances. See Heien, 135 S. Ct. at 541 (Kagan, J., concurring).

We start with the statute's language. Under Massachusetts law, "[a] fundamental tenet of statutory

---

[6] In these circumstances, we must make an "informed prophecy" about how the highest state court would rule on questions of that state's law. See, e.g., United States v. Tavares, 843 F.3d 1, 14 (1st Cir. 2016); Ambrose v. New Eng. Ass'n of Schs. & Colls., Inc., 252 F.3d 488, 497-98 (1st Cir. 2001) ("Our task . . . is to discern the rule the state's highest court would be most likely to follow . . . even if our independent judgment might differ."). While doing so, "we may look to a variety of sources, including decisions of the lower courts in Massachusetts, persuasive adjudications by other courts, scholarly works, and considerations touching upon public policy." Vt. Mut. Ins. Co. v. Zamsky, 732 F.3d 37, 42 (1st Cir. 2013).

interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Commonwealth v. Chamberlin, 45 N.E.3d 900, 905 (Mass. 2016) (quoting In re Custody of Victoria, 39 N.E.3d 418, 425 (Mass. 2015)).

Here, Section 4A's use of the word "and" is instructive since it seemingly creates two separate requirements for motorists: first, that they "shall so drive that [their] vehicle shall be entirely within a single lane," and second, that they "shall not move from the lane in which [they are] driving until [they have] first ascertained if such movement can be made with safety." Cf. Flemings v. Contributory Ret. Appeal Bd., 727 N.E.2d 1147, 1150 (Mass. 2000) (relying on the word "and" to conclude that the plain language of the relevant statute set out two independent requirements for retirement-program eligibility).

The statute's use of the words "drive" and "move from" also supports this reading, since it suggests that Section 4A imposes one requirement when motorists travel or "drive" on a particular "way" that has been divided into "lanes" and another when they try to depart or "move from" one of these lanes, such as when pulling off and stopping on the side of the road or turning onto another road. In other words, concluding that Section 4A imposes a specific duty on motorists to keep their vehicles from

crossing the fog line while traveling ensures that all the words of the statute are "given their ordinary and usual meaning, and each clause or phrase is . . . construed with reference to every other clause or phrase without giving undue emphasis to any one group of words." City of Worcester v. Coll. Hill Props., LLC, 987 N.E.2d 1236, 1241 (Mass. 2013) (quoting Selectmen of Topsfield v. State Racing Comm'n, 86 N.E.2d 65, 68 (Mass. 1949)).

Some Massachusetts courts that have touched on the meaning of the statute similarly suggest that these types of Section 4A violations need not be of an unsafe nature. See, e.g., Commonwealth v. Jewett, 31 N.E.3d 1079, 1082 (Mass. 2015) (stating, in dicta, that a driver whose vehicle swerved over a fog line, back into the travel lane, over the double yellow lines, and then back over the fog line had committed "three marked lanes violations" without opining on whether the maneuvers were unsafe); Commonwealth v. Cameron, No. 14-P-1521, 2016 WL 393145, at *1 (Mass App. Ct. Feb. 2, 2016) (per curium) (holding that a Section 4A violation for crossing the yellow line between lanes did not require evidence that the crossing had "created a risk of safety"); Commonwealth v. Shaker, No. 10-P-1991, 2011 WL 5146726, at *1 & n.2 (Mass. App. Ct. Nov. 1, 2011) (declining to consider safety concerns associated with driving outside of the travel lane, though still concluding that a Section 4A violation had occurred once the vehicle drifted over the broken lines separating the travel lane

- 10 -

from the passing lane), <u>review denied</u> 959 N.E.2d 435 (Mass. 2011) (unpublished table decision).

Other Massachusetts courts, however, have recognized that one of Section 4A's core purposes is safety. <u>See, e.g.</u>, <u>Zion v. Colonial Wholesale Beverages, Inc.</u>, No. 00-P-972, 2002 WL 1009067, at *1 (Mass. App. Ct. May 17, 2002) (per curium) (stating that the purpose of Section 4A "is to require drivers to use care in changing lanes" and that defendant's "straddling" of the center yellow line did not violate the statute because it was done to avoid another car during an emergency situation); <u>Commonwealth</u> v. <u>Santos</u>, No. 06-754, 2007 WL 2851015, at *3 (Mass. Super. Ct. May 18, 2007) (suggesting, where the defendant's vehicle had crossed the line marking the edge of a single-lane highway entrance ramp, that the purpose of lines was "to alert the driver to the edge of the travel lane and the nearby guardrail" and that Section 4A, for that reason and others, did not apply). Given this purpose, reading a safety requirement into this aspect of the statute may ensure that "all parts [of Section 4A] shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose." <u>Coll. Hill Props., LLC</u>, 987 N.E.2d at 1241 (quoting <u>Selectmen of Topsfield</u>, 86 N.E.2d at 68).[7]

---

[7] At least one federal district court has endorsed this reasoning, suggesting (in dicta) that a driver does not violate

- 11 -

Nonetheless, given the statute's language and the lack of any definitive commentary on the issue by Massachusetts courts, the statute's application to the facts of this case is, giving Lawrence every benefit of the doubt, at best ambiguous. Of course, it would be nonsensical to read Section 4A in a way such that a violation arises when a driver causes his or her vehicle to cross a fog line even when it is *unsafe* to continue driving in a given travel lane. See Zion, 2002 WL 1009067, at *1. But the statute could reasonably be read to require the converse, i.e., that motorists, when traveling on a road subject to the statute, must travel or "drive" within a single lane even if it would pose no immediate safety risk toward any other pedestrian or driver to drive outside that lane or between two lanes. In any event, even if Lawrence's argument is correct, any mistake made by Detective Reynolds was objectively reasonable under Heien, and the district court properly denied Lawrence's suppression motion.[8]

---

Section 4A where, for example, "[t]here is . . . no evidence [that a] mini-swerve [across a fog line] into the breakdown lane was unsafe in any way." United States v. Brito-Melo, No. 05-10227-PBS, 2006 WL 2559860, at *6 (D. Mass. Sept. 5, 2006).

[8] Lawrence briefly adverts to the rule of lenity, arguing that any ambiguity in Section 4A should be resolved in his favor. See United States v. Bass, 404 U.S. 336, 348 (1971) ("[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."). Resorting to the rule of lenity at this stage, however, would be inappropriate since we need only recognize, but not resolve, such ambiguity. See United States v. Councilman, 418 F.3d 67, 83 (1st Cir. 2005) (noting that the rule of lenity applies only in cases of "grievous" ambiguity, such as when the purported ambiguity in a statute cannot be resolved using traditional tools

## III. Conclusion

We emphasize that our holding in this case is a narrow one.  Given the particular facts of this case and the particular statutory language at issue, we conclude that Detective Reynolds held an objectively reasonable belief that Section 4A prohibited a vehicle's straddling of a fog line while traveling, that he held a reasonable suspicion that Lawrence had violated Section 4A, and that his stop of the car was lawful under the Fourth Amendment. For these reasons, the district court's decision is AFFIRMED.

---

of statutory construction).  More to the point, even if the rule of lenity may favor Lawrence in the context of a marked lanes violation, <u>Heien</u> states that the ambiguity favors the Government in the context of a Fourth Amendment challenge.  <u>See</u> 135 S. Ct. at 536-40.