PER CURIAM: *
This interlocutory appeal concerns the district court’s granting Renieri Rosales- • Giron’s motion to suppress, regarding a Mississippi Highway Patrolman’s conducting a traffic stop of Rosales’ vehicle. Primarily at issue is whether the Trooper had probable cause to believe Rosales committed a traffic violation (careless driving), justifying the stop. REVERSED and REMANDED.
I.
The following factual recitation is based on evidence presented by the Government (testimony by the Trooper and his video recording of Rosales’ vehicle) at the hearing on the suppression motion. Rosales did not present evidence.
The Trooper was assigned to the Highway Patrol’s Traveling Criminal Apprehension Program, which focuses on interstate criminal activity. On 23 October 2013, he was in the median of Interstate 20 at mile-marker 61 in Rankin County, Mississippi. In the median, his vehicle was surrounded by an open area with an unobstructed view of oncoming and passing traffic. While observing eastbound traffic, the Trooper heard the sound of an eastbound vehicle driving on the rumble strips (the indentations on the side of the road that alert drivers to alter their trajectory), outside (to the right of) the fog line (a white line on the right side of the right lane on a highway). Because this rumbling “caught [his] eye”, the Trooper concluded the vehicle had run off the road.
Based on his training, the Trooper was suspicious of the vehicle, a van. He knew perpetrators of crimes involving highway transportation of illegal drugs and aliens often operate with two vehicles: the first serves as a decoy to attract the attention of law-enforcement officers, while the second perpetrates the principal offense, such as transporting drugs or aliens. Consequently, the Trooper waited about one minute to pursue the van, after concluding another vehicle was not following it.
After reaching the van in approximately one minute, the Trooper drove side-by-side with it and observed it move over onto the fog line. (The Trooper was unable to see *248 into the van because its windows were tinted black.) He then changed lanes, drove behind the van, and activated his vehicle’s bar light (blue). A video camera displaying a Trooper’s view from the front of his vehicle activates automatically when the vehicle’s bar light is activated. (The Trooper could not recall whether he manually initiated the recording or whether it commenced because he activated the bar light.) Subsequently, the Trooper observed the van drive on (“hit” or “bump”) the fog line (depicted in the video recording), which prompted him to conduct the stop.
The Trooper stopped the van for careless driving, a violation of Mississippi law. Miss.Code Ann. § 63-8-1213 (“Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving.”). Rosales was the driver of the van. The Trooper issued him a warning citation for, inter alia, careless driving. During the stop, the Trooper discovered numerous individuals in Rosales’ vehicle, later claimed to be illegal aliens.
On 23 November 2013, Rosales was charged in a single-count indictment with transporting aliens for the purpose of commercial advantage or private gain, in violation of 8' U.S.C. § 1324(a)(1)(A)(ii). He moved to suppress the evidence discovered during the stop. In that regard, as expressed during the suppression hearing, Rosales challenged only whether the initial stop was lawful, not any of the conduct following the stop.
In his suppression-hearing testimony, the Trooper explained why he stopped Rosales. The Trooper justified the stop based only on violations of Mississippi’s careless-driving statute, which he explained occurred three times: Rosales drove on the rumble strips, outside of the fog line, when he passed the Trooper at mile-marker 61; and Rosales hit or bumped the fog line twice after the Trooper began following him — while the Trooper and Rosales were side-by-side and later, when the Trooper was behind Rosales while the video camera was recording. Concerning the Trooper’s observing Rosales’ hitting the fog line, the Government asked the Trooper: “So did he run off the side of road more than once before you stopped him?” He replied: “Yes. He was weaving once I pulled out on him as well. He hit [the fog line] a couple of times.”
The video recording made by the Trooper was shown during the hearing, with his being questioned about it while it was being shown. As noted, Rosales did not present evidence.
In ruling from the bench, the district court stated: “I would have a hard time sustaining the ticket for careless driving when the driver didn’t run off the road” and “ran over the fog line because the Trooper was riding along — beside him. That would make me nervous to have ... a trooper riding beside me for an extended-period of time”; Regarding the vehicles being side-by-side, the court found, inter alia, that Rosales “simply moved over and happened to run onto the fog line”. The court stated to the Government: ‘You’d be raising Cain with the judge if you got a ticket for deviating six inches ... onto the white [fog] line ..., wouldn’t you?” In granting the motion, the court ruled: “There just simply was not enough carelessness in this to be a danger to anybody”.
The Government’s motion for reconsideration was denied. United States v. Rosales, No. 13-CR-96 (WHB-FKB), op. at 247-48 (S.D.Miss. 26 Feb. 2014) (unpublished). In doing so, the court elaborated on its rationale for suppressing the evi *249 dence: the Trooper lacked credibility because, first, he could not have heard Rosales’ vehicle driving on the rumble strips when it passed him at mile-marker 61; second, Rosales’ driving on the fog line once without other evidence of unsafe or impaired driving was insufficient to justify a stop (was not careless driving); and third, the Trooper’s actions in following the van did not support the reason provided for the stop by the Trooper — the court stated that, instead of stopping the vari promptly, the Trooper stopped the van because of the Trooper’s extensive experience and only after he followed Rosales for a considerable distance, noted the van’s out-of-state license plate, and observed Rosales’ ethnicity. (But regarding ethnicity, and as noted, the Trooper was unable to see into the van because its windows were tinted black.)
II.
Pursuant to 18 U.S.C. § 3731 (“An appeal by the United States shall lie to a court of appeals from a decision ... of a district court suppressing or excluding evidence ... in a criminal proceeding....”), we have jurisdiction for this interlocutory appeal. It goes without saying that, generally, “[t]he government may not use evidence obtained in violation of the Fourth Amendment’s prohibition against unreasonable searches and seizures to prove a defendant’s guilt at trial”. United States v. Breeland, 53 F.3d 100, 102 (5th Cir.1995).
In appeals concerning suppression of evidence, the district court’s legal conclusions are reviewed de novo; its findings of fact, for clear error. E.g., United States, v. Jenson, 462 F.3d 399, 403 (5th Cir.2006) (citation omitted). “A finding of fact is clearly erroneous when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.” United States v. Gomez-Moreno, 479 F.3d 350, 354 (5th Cir.2007) (citation and quotation marks omitted).
As reflected in the clear-error standard, district courts are afforded substantial deference in their factual determinations, especially when, as here, they involve credibility assessments derived from live testimony. E.g., United States v. Robinson, 741 F.3d 588, 594 (5th Cir.2014) (citation omitted). The court not only observed, but questioned, the Trooper during the hearing and, as stated in the denial of the Government’s motion to reconsider, was “not convinced that the testimony of the [Tjrooper was credible”, referencing: the first claimed offense, when Rosales drove by the Trooper at mile-marker 61 (the court'“doübt[ed]” the Trooper could hear the van driving on the rumble strips); the Trooper’s making the stop based on careless driving; and the stop, in the court’s view, being based, instead, on other factors, such as the van’s out-of-state tag.
' For the first time on appeal, Rosales asserts the rumble strips were inside the fog line; therefore, according to Rosales, the Trooper’s testimony that he heard Rosales drive on the strips does not mean Rosales necessarily crossed the fog line. We will not consider this fact-based issue, which was not raised in district court in support of Rosales’ motion to suppress. E.g., United States v. Pope, 467 F.3d 912, 918-19 & n. 20 (5th Cir.2006). (Even if we were to review the issue instead for plain error, it would fail because, for such questions of fact, they cannot provide a basis for plain (clear or obvious) error. E.g., United States v. McCaskey, 9 F.3d 368, 376 (5th Cir.1993) (resolution of a factual issue not presented to the district court *250 cannot be plainly erroneous in sentencing context).)
For resolving this appeal, we need consider only the third claimed offense, which was recorded in, and verified by, the video while the Trooper was following the van, subsequent to having been beside it: the Trooper testified the van hit, or bumped, the fog line. In short, was this sufficient to justify the traffic stop? If it was, it is not necessary, as explained infra, to engage in a balancing analysis to determine whether the stop was otherwise justifiable based on reasonable suspicion. Accordingly, it would not be necessary to decide whether the district court clearly erred in finding, inter alia: the Trooper did not hear the van drive on the rumble strips at mile-marker 61; and, during the side-by-side instance, it was reasonable for the van to “[run] over on the fog line because the [TJrooper was riding ... beside [it].... for an extended period of time”. (Accordingly, contrary to the position taken by the dissent at 2, we do not “reverse the district court based upon testimony of the [T]rooper as the district court is entitled to make the credibility determinations based upon its live assessment of the witness”. As stated, regarding the third violation provided by the Trooper, the video shows the fog line was hit. United States v. White, 401 U.S. 745, 753, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (“An electronic recording will many times produce a more reliable rendition ... than will the unaided memory of a police agent.”); see also United States v. Vickers, 442 Fed.Appx. 79, 86, 87 & n. 7 (5th Cir.2011) (no error in disregarding witness’ testimony when testimony conflicted with video evidence). Likewise, despite the dissent’s concerns at 6, remand is not required for the district court to clarify its findings of fact and conclusions of law.)
“The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).” United States v. Stevens, 487 F.3d 232, 244 (5th Cir.2007) (citing cases). “Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer’s action of stopping the vehicle was justified at its inception, and (2) whether the officer’s actions were reasonably related in scope to the circumstances that justified the stop.” Id.. (citing Terry, 392 U.S. at 19-20, 88 S.Ct. 1868). As noted, during the suppression hearing, Rosales expressly declined to contest the second prong of Terry, contesting only whether the stop was justified at its inception. Accordingly, we consider only the first prong of Terry.
For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that “some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle”. United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir.2005) (citing Breeland, 53 F.3d at 102). “Reasonable suspicion” analysis requires assessing the totality of the circumstances to ascertain the reasonableness of the suspicion. United States v. Powell, 732 F.3d 361, 369 (5th Cir.2013) (citation omitted). This is consistent with the “touchstone of Fourth Amendment analysis [being] reasonableness”, which “requires a balancing of the public interest with an individual’s right to be free from arbitrary intrusions by law enforcement”. United States v. Brigham, 382 F.3d 500, 507 (5th Cir.2004) (en banc) (citations omitted).
In that regard, the Supreme Court held unanimously in Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996): “As a general matter, the deci *251 sion to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.” Id. at 810, 116 S.Ct. 1769. “Probable cause exists when the totality of facts and circumstances within a police officer’s knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.” United States v. Zavala, 641 F.3d 562, 575 (5th Cir.2008) (quoting United States v. Castro, 166 F.3d 728, 733 (5th Cir.1999) (en banc)). Therefore, probable cause to make a traffic stop exists, inter alia, when a defendant commits a traffic violation and a law-enforcement officer observes the violation. E.g., United States v. Khanalizadeh, 493 F.3d 479, 482 (5th Cir.2007). “Where probable cause has existed, the only cases in which we have found it necessary actually to perform the ‘balancing’ analysis involved searches or seizures conducted in an extraordinary manner, unusually harmful to an individual’s privacy or even physical interests....” Whren, 517 U.S. at 818, 116 S.Ct. 1769. An “extraordinary-manner” exception is neither asserted, nor applicable, in this instance.
As is well known, “[t]he rule established by the Supreme Court in Whren allows officers to, justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop”, United States v. Cole, 444 F.3d 688, 689 (5th Cir.2006); but, on the other hand, the legal justification for the traffic stop must be “objectively grounded”, id. (citation omitted). As noted, the district court concluded, inter alia, that the third claimed careless-driving offense, documented in the video recording, when Rosales hit the fog line, did not justify the stop.
The Mississippi Court of Appeals, however, has found probable cause for a careless-driving violation based on hitting, or bumping, the fog line. In 2004, it ruled a court must reasonably interpret a wide range of factors when determining carelessness under the careless-driving statute. Henderson v. State, 878 So.2d 246, 247 (Miss.Ct.App.2004). Subsequently, the court held an officer’s stating a driver bumped the fog line was sufficient to constitute probable cause to stop the driver for careless driving. Dominick v. State, 108 So.3d 452, 455-56 (Miss.Ct.App.2012) (probable cause existed where an officer testified the defendant’s car bumped the fog line prior to changing lanes and a review of videotape evidence did not contradict the officer’s testimony); Martin v. State, 43 So.3d 533, 535 (Miss.Ct.App.2010) (“[T]he circuit court judge stated that[,] by his understanding of the rules of the road, hitting the fog line while driving clearly constituted probable cause for an officer to perform a traffic stop”, and “the circuit court did not err in finding that probable cause existed for the traffic stop”.).
The underlying facts of these cases include additional incidences of carelessness, such as swerving or quickly driving back- and-forth, but they do not distinguish the importance of each violation in finding probable cause. See, e.g., Martin, 43 So.3d at 535. Mississippi’s careless-driving statute is broadly worded to encompass drivers who fail to exercise “due regard for the width ... of the streets and highways”, the offense for which the Trooper stopped Rosales. Miss.Code Ann. § 63-3-1213. We conclude from this broad language and the cited cases that a traffic stop for careless driving is justified in Mississippi when a law-enforcement officer observes an automobile hit the fog line. (The dissent fails to cite a Mississippi decision that holds a stop for careless driving is unjustified when a driver hits the- fog line'only once. Contrary to the dissent’s statement at 3, note 2, our noting this failure is not a “suggestion that [the dis *252 sent] need[s] the support of a Mississippi case [with that] holding”; on the other hand, the dissent’s failure to do so adds weight to our holding that there was probable cause for the stop in this instance after the van hit the fog line only once.) But, even if more is required (as the dissent urges at 3-6), such additional factors exist preceding the third claimed offense, such as the van’s weaving when the Trooper pulled out from the median, and the van’s later hitting the fog line when the Trooper’s vehicle was beside the van. (For that side-by-side instance, although the court ruled it was reasonable for the van to do so in those circumstances, it nevertheless found the van ran on the fog line. Regarding a driver’s reaction in the presence of a law-enforcement vehicle, the dissent at 5-6, and note 5 at 6, fails to cite United States v. Escalante, 239 F.3d 678, 681 (5th Cir.2001). There, it was claimed the Deputy caused defendant to weave. But, in addition to stating defendant’s “arguments ha[d] persuasive force”, our court “recognize[d]” the Deputy had an equally valid position: a driver would not swerve even if an officer’s vehicle was “approaching from behind”. Id. Our court then stated, “[i]ndeed, perhaps the prudent driver should be more careful to maintain his lane in such a situation”, and held it could not conclude probable cause was lacking for the stop. Id.)
Therefore, the district court erred in granting the motion to suppress by holding no reasonable law-enforcement officer would conduct a stop under these circumstances. This is the exact issue Whren resolved by holding an officer may conduct a stop where probable cause exists, 517 U.S. at 810, 116 S.Ct. 1769; and probable cause to conduct a stop exists when law enforcement officers observe traffic violations, e.g., Khanalizadeh, 493 F.3d at 482. Although the Trooper only issued Rosales a warning citation for careless driving, it nevertheless was issued because the Trooper observed Rosales drive carelessly. Based on the third claimed offense, and pursuant to Mississippi’s careless-driving statute, the requisite probable cause existed for the stop.
Along that line, and as discussed supra, in granting the suppression motion, the district court also addressed the Trooper’s subjective intentions as a trained highway law-enforcement officer and the suspicions that arose from such training. Although, in denying the Government’s motion to reconsider, the court expressly eschewed reliance on the Trooper’s subjective intentions, it proceeded to discuss the Trooper’s experienced-based suspicions and Rosales’ ethnicity as reasons for suppressing the evidence. As also discussed supra, this constituted error. Whren, 517 U.S. at 813, 116 S.Ct. 1769 (“Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.”); see also, e.g., Cole, 444 F.3d at 689 (test for traffic stop legality is objective).
III.
For the foregoing reasons, the suppression order is REVERSED, and this matter is REMANDED to district court for further proceedings.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.