# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-00772-SCT

*KENDALL MARTIN a/k/a KENDALL DEVAL MARTIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/13/2015 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| TRIAL COURT ATTORNEYS: | MATTHEW ALLEN BALDRIDGE |
| | BENJAMIN FREEMAN ROBINSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TODD A. COKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/19/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Kendall Martin was convicted of possession of more than one kilogram of marijuana with intent to distribute.  Martin was sentenced as a subsequent drug offender and as a nonviolent habitual offender to sixty years in the custody of the Mississippi Department of Corrections without the possibility of parole.  On appeal, Martin argues that the trial court erred by admitting the evidence because the initial traffic stop was not based on probable

cause or reasonable suspicion and the stop was unreasonably extended in violation of Martin's Fourth Amendment rights. Martin also argues that the State failed to prove that he was a habitual offender under Mississippi Code Section 99-19-81, and that the trial court erred in sentencing him as such.

## FACTUAL BACKGROUND

¶2. Around 4:55 p.m. on March 27, 2013, Officer Jason Johns, a deputy for the Rankin County Sheriff's Department, was traveling on I-20 eastbound when he observed Kendall Martin cross over the right lane fog line. Martin was traveling in a Chevrolet SUV in front of Officer Johns. At that point, Officer Johns, according to his standard procedure, pulled beside Martin to see if he was wearing a seatbelt and how many occupants were in the vehicle. Officer Johns then dropped back behind Martin, observed him hit the line or "g[e]t real close to it" again, and then initiated the traffic stop. The second encroachment upon the fog line was recorded on Officer Johns's car camera.

¶3. Officer Johns approached the passenger-side window. When he leaned in to ask for Martin's driver's license and proof of insurance, he could smell an overwhelming odor of air fresheners and a faint odor of marijuana coming from the car. He testified that, in his experience, people who transport drugs use air fresheners to cover the odor. Officer Johns worked as a sergeant and K-9 handler for the Flowood Police Department. He also was a sworn deputy for the Rankin County Sheriff's Department on the drug task force. He testified that he has had hundreds of classes in narcotics and criminal interdiction, and he had "been doing drug interdiction work pretty much [his] entire career."

2

¶4.    Officer Johns asked Martin to step out of the vehicle while he radioed in Martin's driver's license information.   Martin told Officer Johns that he was driving back to Tuscaloosa, Alabama, from Austin, Texas, where he had been visiting his cousin for a few days.  Martin also handed Officer Johns a personal insurance card for a rental vehicle, which Johns considered suspicious. When the dispatcher radioed back that Martin's driver's license was valid, Officer Johns informed Martin that he had smelled marijuana in the vehicle.  He then asked Martin if he could search the car, to which Martin replied, "it don't matter." Before searching the vehicle, Officer Johns asked Martin if he or his cousin had smoked in the vehicle, if anyone else besides Martin had used the vehicle, and if there were any guns in the vehicle.  Martin informed Officer Johns that he had driven to Austin in one rental vehicle and had traded it in the night before in Austin to drive back in the bigger SUV.

¶5.    The smell of marijuana became much stronger when Officer Johns opened the passenger's side door.  When he opened the back hatch, the odor of marijuana "nearly blew [him] down."  Officer Johns found a black duffel bag that felt like it contained bricks.  He testified that he could tell just by feeling the bag that there were illegal narcotics in the bag. Martin was then placed under arrest and read his *Miranda*[1] rights.  When Officer Johns opened the duffel bag, he found 9.9 pounds of marijuana.

¶6.    Martin filed a motion to suppress evidence of the drugs found during the search because the search and seizure violated his Fourth Amendment rights.  Martin argued that Officer Johns did not have reasonable suspicion to stop him, and that the stop was in reality

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

3

motivated by racial profiling. He also argued that Officer Johns illegally extended the stop to search the car after the investigation of the traffic violation had concluded. At the suppression hearing, Officer Johns testified that he pulled Martin over for careless driving after observing him twice cross or bump the fog line, which he believed to constitute a violation of Mississippi Code Section 63-3-1213. The trial court found that there was sufficient probable cause for the stop and there was no unreasonable delay in the search, and, therefore, denied the motion to suppress. After a jury trial, Martin was found guilty of possession of more than one kilogram of marijuana with intent to distribute. Because Martin had four prior felony drug convictions, the trial court sentenced him as a habitual offender and subsequent drug offender to sixty years without the possibility of parole in the custody of the Mississippi Department of Corrections.

**ANALYSIS**

¶7.     "Whether probable cause or reasonable suspicion exists is subject to a de novo review. But the Court limits the de novo review of the trial court's determination to 'historical facts reviewed under the substantial evidence and clearly erroneous standards.'" *Eaddy v. State*, 63 So. 3d 1209, 1212 (Miss. 2011) (quoting *Dies v. State,* 926 So. 2d 910, 917 (Miss. 2006)).

> **I.      The trial court did not err in denying Martin's motion to suppress the evidence.**
>
> > **A.      Officer Johns had sufficient probable cause to stop Martin for careless driving.**

4

¶8.     Martin argues that there was no probable cause or reasonable suspicion for the traffic stop, and that the supposed traffic violation was pretextual.  Because courts have seemed to confuse the standards of "probable cause" and "reasonable suspicion" and neither party distinguished which standard is proper, we will first attempt to sort out the distinctions between the two.

¶9.     An officer may make a brief, investigatory stop of a vehicle if the officer has reasonable suspicion to believe that the occupants of the vehicle have been, are currently, or are about to be involved in criminal activity.  *See United States v. Hensley*, 469 U.S. 221, 227, 105 S. Ct. 675, 679-80, 83 L. Ed. 2d 604 (1985); *Dies v. State*, 926 So. 2d 910, 918 (¶ 22) (Miss. 2006); *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114 (¶ 16) (Miss. 1999). The suspicion must be "grounded in specific and articulable facts . . . ." *Eaddy v. State*, 63 So. 3d 1209, 1213 (Miss. 2011) (citing *Walker v. State*, 881 So. 2d 820, 826 (Miss. 2004); *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Haddox*, 636 So. 2d at 1235).

¶10.    The Court has explained reasonable suspicion as follows:

> Grounds for reasonable suspicion to make an investigatory stop generally come from two sources: either the officers' "personal observation" or an informant's tip. *Williamson v. State,* 876 So. 2d 353, 355 (Miss. 2004) (citation omitted).  *See also Florida v. J.L.,* 529 U.S. 266, 270, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000).  The officer's personal observation includes information from other law-enforcement personnel.  *See Dies,* 926 So. 2d at 920 ("[R]easonable suspicion . . . can be transferred from officer to officer. . . ."). And an informant's tip may provide reasonable suspicion if accompanied by some indication of reliability; for example, reliability may be shown from the officer's independent investigation of the informant's information. *Florida v. J.L.,* 529 U.S. at 270, 120 S. Ct. 1375.  *See, e.g., McClellan v. State,* 34 So. 3d 548, 552 (Miss. 2010) (valid investigatory stop where officers

5

further investigated "vague" information received from informant before making the stop); ***Burchfield v. State***, 892 So. 2d 191, 194–95 (Miss. 2004) (reasonable suspicion for investigatory stop supported by store clerk's tip that described defendants who had purchased precursors and by officer's personal observation of defendants' purchases in vehicle described by clerk); ***Williamson***, 876 So. 2d at 356 (reasonable suspicion for investigatory stop supported by tip from unnamed informant that described, in relevant part, the defendant and his vehicle and tag number, and by officer's subsequent verification of number).

But the scope of an investigatory stop is limited. ***Floyd v. State***, 500 So. 2d 989, 992 (Miss. 1986). The scope of a search or seizure must relate to the initial circumstances that called for police action. ***Haddox***, 636 So. 2d at 1234. Thus, when police detention exceeds the scope of the stop, the stop becomes a "seizure," and the State must show probable cause. ***Floyd***, 500 So. 2d at 992 (citation omitted).

***Eaddy***, 63 So. 3d at 1213-14.

¶11.    Thus, reasonable suspicion is based on something less than the personal observation of a violation of law. Reasonable suspicion is the standard for a stop or search based on suspicious activity that does not yet amount to criminal activity, but which compels an officer to believe that criminal activity has happened, is happening, or is about to happen.

¶12.    Probable cause, on the other hand, is a higher standard and requires a higher level of suspicion than reasonable suspicion. ***United States v. Sokolow***, 490 U.S. 1, 8, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) (citing ***United States v. Montoya de Hernandez***, 473 U.S. 531, 541, 544, 105 S. Ct. 3304, 3310, 3312, 87 L. Ed. 2d 381 (1985)) ("[T]he level of suspicion required for a ***Terry*** stop is obviously less demanding than that for probable cause."). "The foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations." ***Whren v. United States***, 517 U.S. 806, 817, 116 S. Ct. 1769, 1776, 135 L. Ed. 2d 89 (1996) (quoting ***Delaware v. Prouse***, 440 U.S. 648, 659, 99 S.

6

Ct. 1391, 1399, 59 L. Ed. 2d 660 (1979)). "Therefore, probable cause to make a traffic stop exists, *inter alia,* when a defendant commits a traffic violation and a law-enforcement officer observes the violation." *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014) (citing *United States v. Khanalizadeh,* 493 F.3d 479, 482 (5th Cir. 2007)).

¶13.    The Court has held that the test for determining probable cause is the totality of the circumstances. *Harrison*, 800 So. 2d at 1138 (¶ 18) (citing *Haddox,* 636 So. 2d at 1235). The Court has defined probable cause as:

> a practical, nontechnical concept, based upon the conventional consideration of every day life on which reasonable prudent men, not legal technicians act. It arises when the facts and circumstances with an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.

*Id.* (quoting *Conway v. State*, 397 So. 2d 1095, 1098 (Miss. 1980)).

¶14.    In *Whren v. United States*, the United States Supreme Court stated that, generally, "the decision to stop an automobile is reasonable where the police have *probable cause* to believe that a traffic violation has occurred" regardless of the officer's subjective intent. *Harrison*, 800 So. 2d at 1138 (emphasis added) (quoting *Whren*, 517 U.S. at 810, 116 S. Ct. at 1772).

> The traffic stop may have been pretextual. But under *Whren v. United States,* a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has "probable cause to believe that a traffic violation has occurred." *This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop.* On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no "objective basis" for the stop, and the stop is illegal.

*Moore v. State*, 986 So. 2d 928, 933 (Miss. 2008) (emphasis in original) (internal citations omitted) (quoting *Walker v. State*, 913 So. 2d 198, 225-26 (Miss. 2005)).

¶15.    A traffic stop can even be reasonable in the event of a mistake of law.  If the probable cause is based on a mistake of law, as long as the "probable cause is based on good faith and a reasonable basis, then it is valid."  *Harrison*, 800 So. 2d at 1138-39 (citing *United States v. Wallace*, 213 F.3d 1216 (9th Cir. 2000)).

¶16.    Therefore, when a police officer personally observes a driver commit what he reasonably believes is a traffic violation, he then has probable cause to stop the vehicle.  The Mississippi careless-driving statute provides that "[a]ny person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving."  Miss. Code Ann. § 63-3-1213 (Rev. 2013).

¶17.    The Court has never considered whether crossing the fog line, as in the instant case, is a violation of the careless-driving statute.  Other courts that have considered the issue have determined that crossing or "bumping" the fog line gives an officer probable cause or reasonable suspicion to believe that the defendant has violated the Mississippi careless-driving statute.  *See United States v. Diaz*, 802 F.3d 234 (2d Cir. 2015); *United States v. Rosales-Giron*, 592 F. App'x 246 (5th Cir. 2014) (per curiam); *Nolan v. State*, 182 So. 3d 484 (Miss. Ct. App. 2016); *Williams v. State*, 126 So. 3d 85 (Miss. Ct. App. 2013); *Dominick v. State*, 108 So. 3d 452 (Miss. Ct. App. 2012); *Ellis v. State*, 77 So. 3d 1119 (Miss. Ct. App. 2011); *Martin v. State*, 43 So. 3d 533 (Miss. Ct. App. 2010), *Shelton v.*

8

*State*, 45 So. 3d 1203 (Miss. Ct. App. 2010); *Tran v. State*, 963 So. 2d 1 (Miss. Ct. App. 2006); *Doolie v. State*, 856 So. 2d 669 (Miss. Ct. App. 2003); *Blake v. State*, 825 So. 2d 707 (Miss. Ct. App. 2002); *see also* *United States v. Escalante*, 239 F.3d 678 (5th Cir. 2001) (holding that Section 63-3-1213 is not unconstitutionally vague and officer had probable cause to stop defendant after observing defendant twice cross the divider lines of the road); *Henderson v. State*, 878 So. 2d 246 (Miss. Ct. App. 2016) (finding that the officer's observation of a vehicle twice approach a curb constituted probable cause to stop the vehicle)*; Leuer v. City of Flowood*, 744 So. 2d 266 (Miss. 1999) (holding that Section 63-3-1213 is not unconstitutionally vague and officer had probable cause to stop defendant after observing defendant drive onto the shoulder of the road and go into the middle of the roadway).

¶18.     Martin argues that all of the above-listed cases can be distinguished because the violations therein were coupled with other factors or were more severe than those before the Court now.  In *Williams* and *Tran*, which we find persuasive, the Court of Appeals found that there was probable cause to stop a vehicle that had crossed over the fog line just once. *See Williams*, 126 So. 3d 85; *Tran*, 963 So. 2d 1.  In *Dominick*, the Court of Appeals found that there was probable cause to stop a vehicle that had "'bumped' or 'simply rode' the fog line prior to changing lanes." *Dominick*, 108 So. 3d at 456.  In the video of that stop, it was not clear if the defendant had touched the fog line, but the video also did not contradict the officer's testimony. *Id.*  Similarly, in *Henderson*, the defendant twice had approached and "nearly hit" a curb. *Henderson*, 878 So. 2d at 247. Still, the Court of Appeals found that

9

there was probable cause to believe that the defendant was driving without "regard for the width and use of the streets." *Id.*; *see also* Miss. Code Ann. § 63-3-1213.

¶19.    Also, in *United States v. Rosales-Giron*, the Fifth Circuit found that there was probable cause to stop a vehicle under Mississippi's careless-driving statute for just one "hit" or "bump" of the fog line. *Rosales-Giron*, 592 F. App'x 246. There, the sound of a vehicle running over the rumble strips alerted the trooper. *Id.* at 247. He then began following the vehicle. *Id.* While driving side-by-side with the vehicle, he observed the vehicle move onto the fog line. *Id.* When he dropped back behind the vehicle and turned on his blue lights, the video recorded the van "driv[ing] on ('hit[ting]' or 'bump[ing]') the fog line." *Id.* at 248. The district court suppressed the evidence from the stop, finding that there was no probable cause for the stop, and the trooper lacked credibility. *Id.* at 248-49. On an interlocutory appeal, the Fifth Circuit looked at only the third recorded "bump" incident. *Id.* at 250. In reversing the district court, the Fifth Circuit concluded from the broad language of Section 63-3-1213 and the cases from the Mississippi Court of Appeals "that a traffic stop for careless driving is justified in Mississippi when a law enforcement officer observes an automobile hit the fog line." *Id.* at 251. The Court found that an officer's observation of just one hit of the fog line constitutes sufficient probable cause that a violation of Mississippi's careless-driving statute has occurred.

¶20.    Here we have two incidences. First, we have the testimony of Officer Johns, upon which the trial court relied, that the officer had observed Martin's vehicle cross the fog line once before the camera began recording. The second incident is seen in the video of the stop.

10

Martin's vehicle comes close to the fog line, if not contacting it. Officer Johns testified that he believed it had touched the fog line. As in **Dominick**, the video does not contradict Officer Johns's testimony.

¶21. Martin argues that there is no evidence that Officer Johns had probable cause to believe that a traffic violation had occurred, and that the video evidence contradicts Officer Johns's testimony. The Court discerns no instance in which the video contradicts Officer Johns's testimony. Martin's argument also seems to discount the fact that the officer testified to observing Martin's vehicle cross the fog line before the video began recording. The trial judge found the officer's testimony to be credible, and the Court holds that it was not clear error for him to do so.

¶22. Martin also argues that Officer Johns admitted that he had not decided to stop Martin until he pulled beside him and could see that Martin was a black male driving a car with out-of-state license plate, which is evidence that the stop was based on racial profiling. However, that is not what Officer Johns stated or what should be inferred from his statement. Officer Johns testified that he had not definitively made the decision to stop the vehicle until he dropped back behind the vehicle and observed it hit the fog line again, but he already had initiated his standard stop procedure after the first observed cross of the fog line. The video of the traffic stop corroborates Officer Johns's testimony.

¶23. Martin further argues that the fact that Officer Johns told Martin that he was not going to issue a traffic citation for careless driving is indicative of racial profiling. After Martin already had consented to a search of the vehicle, Officer Johns told Martin that he was not

going to write him a ticket for crossing the fog line. He then informed Martin that he was going to check the vehicle, and, "if everything checks out, you'll be on your way." "'There is no requirement that an officer issue a citation for the predicate traffic violation to have a valid stop or search.'" *Walker v. State*, 913 So. 2d 198, 226 (Miss. 2005) (quoting *McCollins v. State*, 798 So. 2d 624, 628 (Miss. Ct. App. 2001)) (finding that Walker's claim that failure to issue a speeding ticket showed pretext was without merit).

¶24. Because Officer Johns observed Martin's vehicle cross the fog line once, and then again approach or "bump" the fog line, and the video evidence, while unclear, does not directly contradict Officer Johns's testimony, the Court holds that there is sufficient evidence that Officer Johns had probable cause to believe that Martin had driven "in a careless or imprudent manner, without due regard for the width . . . and use of the streets and highways" in violation of Section 63-3-1213.

    **B.    Officer Johns had probable cause to search the vehicle as soon as he smelled marijuana, and thus, the stop was not unconstitutionally extended.**

¶25. Martin next argues that, even if Officer Johns had probable cause to stop Martin, the detention became illegal after the investigation of the reason for the initial stop was over. When an officer observes a traffic violation, he has probable cause to detain that person long enough to issue a traffic citation. *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 122) (¶ 46) (Miss. 1999) ("If the police had themselves observed Floyd violating traffic ordinances, they could have stopped him and seized him long enough to process a citation."). "If the officer develops reasonable suspicion of additional criminal activity during his investigation

12

of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010) (citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)).

¶26.    In the present case, Officer Johns testified that he smelled an overwhelming odor of air fresheners and an odor of marijuana as soon as he leaned in the window to retrieve Martin's license and insurance card.  He testified that in his experience, that meant drugs were present.  The video of the stop does not contradict Officer Johns's testimony.  In the video, Officer Johns told Martin that "[he] smelled a hint in there" as soon as he was informed that Martin's license was valid.

¶27.    The Court has held that probable cause may come from any of an officer's five senses. *Dies v. State*, 926 So. 2d 910, 918 (¶ 24) (Miss. 2006) (citing *Miller v. State*, 373 So. 2d 1004, 1007 (Miss. 1979)).  "If an officer clearly smells contraband, such as marijuana, that smell can give rise to the probable cause necessary to search a vehicle and its passengers." *Id.* (citing *Boches v. State*, 506 So. 2d 254, 264 (Miss. 1987)).  Therefore, as soon as Officer Johns smelled the marijuana at the beginning of the stop, he had probable cause to search the vehicle.  The probable cause did not dissipate merely because Officer Johns waited until he had obtained the results of Martin's criminal-database and driver's license checks before bringing it to Martin's attention.  *See Townsend v. State*, 681 So. 2d 497 (Miss. 1996) (holding that the smell of marijuana discovered during a search incident to arrest gave the

13

officer and officers who arrived on the scene six or seven minutes later probable cause to search the vehicle and bags therein).

¶28.    Furthermore, Martin consented to the search. Officer Johns asked Martin, "Do you mind if I check it real quick before I let you go?" Martin replied, "It don't matter." Martin did not argue below, and does not argue here that the consent was not valid. Further, the fact that Officer Johns stated "before I let you go" in his request for consent, does not negate the probable cause that already was present for the search.

¶29.    After giving consent, Officer Johns asked a few more questions to determine if anyone else had been in the vehicle, when the vehicle had been rented, and how long Martin had been driving. Again, Officer Johns already had probable cause and consent to search the car. The Court holds that there was no unreasonable delay in the commencement of the search based on probable cause, and, moreover, Martin consented to the search.

> **II.    Martin was properly sentenced as a habitual offender under Mississippi Code Section 99-19-81**.

¶30.    The State entered into evidence certified judgments of conviction for four separate felonies. Martin was arrested on December 31, 2003, and again on July 13, 2004, for unlawful possession of a controlled substance. He was convicted of both crimes on January 20, 2006, and sentenced to three years each in the custody of the Alabama Department of Corrections, to run concurrently. He was arrested again on February 15, 2006, and convicted of unlawful delivery of a controlled substance on September 6, 2006. Martin was sentenced to eight years in custody for that offense. Finally, he was arrested on June 6, 2006, for trafficking cocaine. He pleaded guilty to unlawful possession of a controlled substance on

14

September 6, 2006, and was sentenced to fifteen years in custody. That sentence was ordered to be served concurrently with Martin's other three sentences.

¶31. Martin argues that he was sentenced incorrectly as a habitual offender under Section 99-19-81 because his sentences for four prior felonies were served concurrently and not consecutively. In *Jackson v. State*, the Court held that "[t]he appellant contends that concurrent sentences are not 'separate terms' required by the statute for sentencing as a recidivist. There is no merit to Martin's contention. The language of the statue requires sentencing to separate terms, specifically omitting the requirement that they must be served separately, or that they must be served at all." *Jackson v. State*, 518 So. 2d 1219, 1219 (Miss. 1988). Martin's argument is without merit.

**CONCLUSION**

¶32. The trial court properly allowed the evidence obtained during the search of Martin's vehicle. The officer had probable cause to stop the vehicle based on a reasonable belief that a traffic violation had occurred. Then, as soon as the officer smelled the odor of marijuana, he had probable cause and consent to search the vehicle. The officer did not prolong the stop improperly. Further, the trial court properly sentenced Martin as a habitual offender because the State presented evidence that Martin previously had served concurrent sentences for four prior drug offenses. Concurrent sentences for different crimes are separate sentences under the habitual offender statute. Martin's conviction and sentence are affirmed.

¶33. **AFFIRMED.**

15

**RANDOLPH, P.J., MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KING, J. ISHEE, J., NOT PARTICIPATING.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶34.    Officer Jason Johns's traffic stop of Kendall Martin was not, in fact, based upon probable cause. Therefore, the trial court erred in denying Martin's motion to suppress, and I respectfully dissent.

¶35.    The Mississippi careless driving statute provides that: "[a]ny person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving," which "shall be considered a lesser offense than reckless driving." Miss. Code Ann. § 63-3-1213 (Rev. 2013). I agree with the majority that a law enforcement officer has *probable cause* to initiate a traffic stop upon observation of the commission of a traffic violation. Maj. Op. ¶ 12 (citing *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014)).

¶36.    At the hearing on Martin's motion to suppress, Officer Johns testified that while driving eastbound on I-20, at about the 66-mile marker, he observed a Chevrolet SUV, which later he determined was being driven by Martin, "[run] over the right lane fog line." Officer Johns then "pulled up next to him on the driver's side, because I look inside the vehicles before I stop then, and made sure he had his seatbelt on, and then pulled in behind him, stopped him." Officer Johns says that he stopped Martin for careless driving. The officer testified at the hearing on the motion to suppress that he made the decision to stop Martin's

16

vehicle "[w]hen I seen him hit the line . . . ."At trial, Officer Johns testified that, after observing the vehicle "[run] over the fog line[2] on the right side of the roadway," he then "got up beside" the vehicle for the purpose of observing "who's in the vehicle," whether the vehicle's occupants were seatbelted, and "how many occupants are in the vehicle for officer safety."

¶37.    When he ascertained that the vehicle's sole occupant was wearing a seatbelt, Sergeant Johns slowed down and "dropped in behind" the vehicle. He then observed the vehicle get "real close to" the fog line. It was at that point that Sergeant Johns activated his blue lights and pulled the vehicle over for careless driving at about the 68-mile marker, west of the Pelahatchie exit. Sergeant Johns approached the passenger side of the vehicle, examined the driver's license and insurance cards, and determined that the driver was Kendall Martin.

¶38.    At trial, Officer Johns testified that he had not decided to pull Martin over after perceiving that he "ran over the fog line," but rather that he had been "in the process of pulling him over." He then stated that "I don't know if I would have stopped him if he had not *hit it* again or if I would." (Emphasis added.) When asked specifically whether he had intended to pull Martin over *after* having observed him running over the fog line, Officer Johns stated the following: "I don't know. Probably I might have let him go, but when he *hit it* again, I mean, that did it." (Emphasis added.)

¶39.    Officer Johns failed to describe the point at which he decided to pull Martin over and whether his decision was triggered by Martin's having "[run] over the fog line" or his having

_____

[2] Officer Johns described the "fog line" as "the white line that runs on the outside lane before you hit the—wake-up bumpers."

later come "real close" to it. Officer Johns's testimony lacked consistency with regard to Martin's latter encounter with the fog line. He could not articulate whether Martin had "hit" the fog line or whether he had come "real close" to it. And the video of the stop does not, as the majority finds, support Officer Johns's testimony. Maj. Op. ¶ 20.[3]

¶40.    To the extent Officer Johns testified that Martin's vehicle came "real close" to the fog line, such observation, standing alone, would have provided no probable cause for Officer Johns to initiate a traffic stop. *See* Miss. Code Ann. § 63-3-603(d) (Rev. 2013) ("Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven . . . as close as practicable to the right-hand curb or edge of the roadway . . . ."). No violation of Section 63-3-1213 occurs when a person drives *within* the "width, grade, curves, corner, traffic and use of the streets . . . ." Officer Johns lacked probable cause to stop Martin for coming "real close" to, but remaining *within* the  "width, grade, curves, corner, traffic and use of the streets . . . ." Such driving does not constitute a traffic violation. Accordingly, the only question before the Court is whether Martin's having "[run] over the fog line on the right side of the roadway" a single time provided probable cause to stop.

---

[3] The majority references ***Dominick v. State***, 108 So. 3d 452, 456 (Miss. Ct. App. 2012) in which the officer who initiated the stop testified that the defendant had "'bumped' or 'simply rode' the fog line prior to changing lanes." The Mississippi Court of Appeals determined that "[a] review of the videotape does not contradict the officer's testimony." ***Id.*** But in that case, the defendant did not dispute what the video showed and "her testimony validated the officer's conclusion." ***Id.*** Moreover, the Court of Appeals found, as the county court had found, that, while "the videotape from the front bumper of the officer's vehicle is not clear," the "'car was too far away to see what the officer saw.'" Here, the video clearly shows what the officer saw. And the video does not show that Martin's vehicle "hit" the fog line.

18

¶41. Many of the cases cited by the majority involve more egregious traffic violations, relatively speaking. *See **United States v. Diaz**, 802 F.3d 234, 238 (2d Cir. 2015) ("the defendants' truck drove over the fog line twice . . . ."); **Rosales-Giron**, 592 F. App'x at 247 ("While observing eastbound traffic, the Trooper heard the sound of an eastbound vehicle driving on the rumble strips (the indentations on the side of the road that alert drivers to alter their trajectory), outside (to the right of) the fog line (a white line on the right side of the right lane on a highway). Because this rumbling 'caught [his] eye,' the Trooper concluded the vehicle had run off the road."); **Nolan v. State**, 182 So. 3d 484, 487 (Miss. Ct. App. 2016) ("Officer Ryan Ainsworth observed Nolan's vehicle traveling at an unsafe distance behind another vehicle on Rice Road in Ridgeland, Mississippi. Nolan's vehicle then swerved, and his passenger-side tires struck the fog line on the right side of the road."); **Ellis v. State**, 77 So. 3d 1119 (Miss. Ct. App. 2011) ("Patrolman Conner based his stop upon the belief that Ellis was driving erratically . . . . Patrolman Conner observed Ellis cross from the fog line to the center line at which point Conner turned on his blue lights to make the stop."); **Martin v. State**, 43 So. 3d 533, 533 (Miss. Ct. App. 2010) ("Trooper Hamblin explained that Tony Martin's vehicle 'went from point A to point B and right back. He didn't [simply] drift over to the fog line.'" ); **Shelton v. State**, 45 So. 3d 1203, 1208-09 (Miss. Ct. App. 2010) ("According to Deputy Sanders, the driver of the rental car, Calvin, crossed over the right fog line and then over-compensated left and crossed the lines that divided two lanes. Deputy Sanders testified that Calvin drove over the fog line and the lane-divider lines twice."); **Doolie v. State**, 856 So. 2d 669 (Miss. Ct. App. 2003) ("Gill Baker, a DUI officer with the

19

Jackson Police Department, observed the vehicle in front of him cross the fog line three times."); **Blake v. State**, 825 So. 2d 707, 708 (Miss. Ct. App. 2002) (Officer "testified to having seen Blake's truck enter the roadway in an erratic manner and to having followed for a distance and observing the truck swerving from the center line to the fog line of the road."); **United States v. Escalante**, 239 F.3d 678, 681 (5th Cir. 2001) ("As Deputy Sanders followed Escalante, Escalante weaved across the divider lines at least twice."); **Henderson v. State**, 878 So. 2d 246, 247 (Miss. Ct. App. 2004) ("During the early morning hours of January 17, 2002, a police officer noticed Efrem Henderson driving his vehicle erratically. The officer stated that Henderson almost hit a curb, stopped at a stop sign, then proceeded through the intersection and almost hit another curb."); **Leuer v. City of Flowood**, 744 So. 2d 266, 267 (Miss. 1999) ("Officer Brian Harper of the Flowood Police Department stopped Leuer after he observed his vehicle run off the road onto the shoulder, make a left turn and then go out into the middle of the roadway.").

¶42. Only three of the cases cited by the majority stand for the proposition that a law enforcement's officer's observation of a singular instance of "[running] over the fog line on the right side of the roadway" or bumping the fog line, standing alone, supports a finding of probable cause sufficient to justify a traffic stop. In other words, these three cases stand for the proposition that a law enforcement officer's observation of a vehicle's having "[run] over the fog line" or bumped the fog line a single time, without more, justifies a stop based on probable cause because the officer observed vehicle's driver commit the crime of careless

driving.[4] *See **Williams v. State***, 126 So. 3d 85 (Miss. Ct. App. 2013) (Law enforcement officers observed a vehicle "weave out [its] lane of traffic and across the fog line . . . ."); ***Dominick v. State***, 108 So. 3d 452, 456 (Miss. Ct. App. 2012) ("Officer Blissard testified that Dominick's car 'bumped' or 'simply rode' the fog line prior to changing lanes."); ***Tran v. State***, 963 So. 2d 1 (Miss. Ct. App. 2006) ("Deputy Penn saw a westbound 1996 Ford F-150 pickup cross the right-hand 'fog line.'").

¶43.    In other jurisdictions, a probable cause finding based on careless driving is supported by more egregious conduct than a singular instance of crossing the fog line. *See **Stuart v. State***, 2017 WL 2364325, * 3 (Ark. Ct. App. May 31, 2017) (Police report supported a probable cause finding because it stated that: "(1) the police received a call about a reckless driver in a red Ford truck on Highway 425, and [Officer] Slaughter located the truck and followed it; (2) Slaughter observed the truck 'swerving back and forth inside its lane'; (3) [Officer] Slaughter observed the truck '[drive] into the turning lane and back into its own lane.'"); ***Hines v. Commonwealth***, 2014 WL 6686794, * 1 (Ky. Ct. App. Nov. 26, 2014) ("Officer Matt Matney of the Greensburg Police Department observed a motor vehicle weaving and swerving over the center line and fog line of the highway."); ***State v. Hansen***, 2014 WL 4922865, * 2 (Mont. Sept. 30, 2014) ("Officer Reichert observed Hansen's vehicle drifting within the lane, varying speed, and touching the centerline and fog line multiple times."); ***Commonwealth. v. Houck***, 102 A.3d 443, 446 (Pa. Super. Ct. 2014) ("Traveling

---

[4] A law enforcement officer has *probable cause* to initiate a traffic stop "'when a defendant commits a traffic violation and a law-enforcement officer observes the violation.'" Maj. Op. at ¶ 12 (quoting ***Rosales-Giron***, 592 Fed. App'x at 251).

21

behind the truck for approximately two miles, Trooper Ives observed the vehicle weaving across the lane of travel crossing the double yellow line and onto the fog line for some distance before Trooper Ives activated his lights."); *State v. Enright*, 4 A.3d 1027, 1029 (N.J. Super. Ct. App. Div. 2010) ("[Officer Eric] Bittman "observed [Enright's] vehicle 'straddling the fog line . . . drift to the shoulder . . . and cross the-the two lane dividing lanes.'"); *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001) (After a particular "car was reported to be 'driving all over the road,'" a "police officer, driving . . . and monitoring the police radio, saw an approaching red vehicle cross over the fog line and come back across its lane to the center line."). *Cf. State v. Seeman*, 2013 WL 6390163, *1 (Minn. Ct. App. Dec. 9, 2013) (Evidence was sufficient to support a conviction of careless driving where "the arresting officer testified that he observed a truck driven by appellant traveling at a greater-than-posted speed on the on-ramp going east on I-94 from Weaver Lake Road and also crossing over the right white fog line. The officer, who followed the truck in his squad car, testified that he saw it drift over into the left lane of traffic and speed up to about 68 miles per hour as clocked on radar. He observed the truck make a full turn while staying over the fog line and then drift into another travel lane going south on I-494.").

¶44.    Other courts have determined that probable cause or reasonable suspicion were altogether lacking. *State v. Peele*, 675 S.E.2d 682, 687 (N.C. Ct. App. 2009) (Officer had no reasonable suspicion to stop even though an anonymous tip reported that the defendant's vehicle had been driving carelessly. "The police officer, who responded to the dispatch, found a burgundy Chevrolet pickup truck at a stoplight, but did not observe any careless or

reckless driving as defendant negotiated the intersection, turned, and drove down the road. At most, the officer saw defendant on a single occasion float to the dotted line and then float back to the fog line."); *State v. Roark*, 229 S.W.3d 216, 217 (Mo. Ct. App. 2007) (Officer lacked reasonable suspicion to stop and conduct a field sobriety test because the "[State Trooper Douglas] Barklage testified at trial that he saw Roark's passenger-side tires cross the fog line twice, onto the paved shoulder of the highway . . . ."); *Commonwealth v. Garcia*, 859 A. 2d 820, 821-22 (Pa. Super. Ct. 2004) ("As appellant neared Officer DeHoff's car, appellant drove over to his right and 'straddled' the white line on the shoulder or berm of the road. Officer DeHoff promptly turned his vehicle around and began to follow appellant. On the next block he noticed that as another car approached appellant from the opposite direction of traffic, appellant again drove over the white berm line until the oncoming car passed.").

¶45.   I vehemently disagree with the majority and the Mississippi Court of Appeals in *Williams*, *Dominick*, and *Tran* that a single instance of crossing or bumping the fog line, without more, provides probable cause for a law enforcement officer to initiate a careless driving traffic stop. No other court in the United States has held that such minimal conduct as Officer Johns observed justifies a stop for careless driving. Yet the Mississippi Court of Appeals—and now the Mississippi Supreme Court—have whittled down the protections of the Fourth Amendment to the United States Constitution and Article 3, Section 23, of the Mississippi Constitution such that any vehicular movement in the direction of or over a fog line that is perceived by a law enforcement officer, without more, constitutes careless driving and provides an objective basis on which a traffic stop may be initiated. That is not enough,

23

and the standard articulated by the Court of Appeals and adopted by this Court runs afoul of the constitutional protections we are bound by our judicial oaths to uphold and defend.

¶46.    And this Court, in holding that Section 63-3-1213 was not unconstitutionally vague, also held that the statute requires a showing of negligence: "the statute echoes the familiar tort law standard, requiring that drivers on Mississippi roads exercise the same standard of care as a prudent person would in the same circumstances."[5] *Leuer*, 744 So. 2d at 270. The United States Court of Appeals for the Fifth Circuit also upheld the statute with the understanding that "[b]ecause it applies only to conduct that is negligent, such that the conduct endangers the motorist or others, the Mississippi law does not empower the police to punish whatever conduct they choose." *Escalante*, 239 F.3d 678. Officer Johns never testified, either explicitly or implicitly, that Martin's vehicle was being driven negligently.

¶47.    "It is bedrock law in Mississippi that criminal statutes are to be strictly construed against the State and liberally in favor of the accused." *Coleman v. State*, 947 So. 2d 878, 881 (Miss. 2006) (citing *McLamb v. State*, 456 So. 2d 743, 745 (Miss. 1984)). It is true, as the majority has observed, that this Court has upheld a finding of probable cause in the

---

[5] The *Leuer* Court continued:

> Those few jurisdictions which have considered the constitutionality of language used in careless driving statutes have found that words communicating negligence or the absence thereof are not unconstitutionally vague. *See, e.g.,* **State v. Merithew**, 220 Neb. 530, 371 N.W.2d 110, 112 (1985) (" 'carelessly or without due caution' are synonymous with 'negligently or without due care' "); **State v. Hagge**, 211 N.W.2d 395, 397 (N.D.1973) (statute requiring those traveling on highways to drive "in a careful and prudent manner" not unconstitutionally vague).

*Leuer*, 744 So. 2d at 270.

24

context of a mistaken but reasonable belief that the that the accused was operating a vehicle in violation of the traffic laws. ***Harrison v. State***, 800 So. 2d 1134, 1139 (Miss. 2001) ("In the instant case, the two deputies paced Harrison as driving between 67–70 miles per hour, which was in violation of the posted sixty (60) mile per hour speed limit. Regardless of whether there were construction workers present in the area the deputies had an objective reasonable basis for believing that Harrison violated the traffic laws of Mississippi by exceeding the speed limit."). In the context of the careless driving statute, where the standard is negligence, an "objective reasonable basis" for a probable cause traffic stop requires more than a singular instance of crossing or bumping the fog line, particularly in light of our mandate to construe criminal statutes strictly against the State.

¶48.    In ***Escalante***, Judge Carl E. Stewart[6] observed in dissent that the goal of the officer who stopped Escalante's vehicle "was obviously not to catch speeders but instead to employ his drug-sniffing dog." ***Escalante***, 239 F.3d at 682 (Stewart, J., dissenting). Here, Officer Johns testified that he is "assigned to a specialized drug task force with the Rankin County Sheriff's Department" and that he had "been doing drug interdiction work pretty much my entire career." He stated that "drug interdiction" involves enforcing traffic laws and apprehending "criminals during that process." But I, as was Judge Stewart, am skeptical that Officer Johns's purpose that day was to catch violators of the careless driving statute. Instead, Officer Johns noticed a Chevrolet SUV with Texas plates "[run] over the fog line" once, determined the vehicle was being driven by an African-American man, and admittedly

---

[6] Judge Stewart is now Chief Judge of the United States Court of Appeals for the Fifth Circuit.

pulled up beside the vehicle to see "if he's wearing a seatbelt." Because the vehicle's occupant was lawfully belted, Officer Johns waited until the vehicle got "real close" to the fog line before initiating a stop. The entire exercise was undertaken solely for the purpose of manufacturing a pretextual excuse to stop the vehicle.

¶49. No Mississippi statute criminalizes a motorist's touching a fog line with the tires or any other part of a vehicle, driving across a fog line, or interacting with a fog line in any manner whatsoever. In fact, no Mississippi statute even mentions a "fog line," nor does any regulation of the Mississippi Department of Public Safety, the Mississippi Department of Transportation, or any other agency of the Mississippi government. Other than the "judge-made law" crafted by our Court of Appeals, Mississippi jurisprudence stands utterly mute on the subject of so-called fog lines. Nothing in our laws or regulations tells the public what a fog line is, what a fog line is for, where, if anywhere, such a thing should be placed on a roadway, who, if anyone, has the authority to decide whether or where to place one, or how to pay for it.

¶50. While law enforcement efforts to curb drug trafficking through the State of Mississippi are necessary and laudable, they must be performed in a manner consistent with the Fourth Amendment to the United States Constitution and Article 3, Section 23, of the Mississippi Constitution. Because Officer Johns did not have an objective, reasonable basis for stopping Martin's vehicle and because the trial court should have granted the motion to suppress the fruits of the illegal search, I would reverse and render his conviction.

**WALLER, C.J., AND KING, J., JOIN THIS OPINION.**

26